MIKE HENNESSY, Appellant, v. CHARLES GINSBERG and Harry Ginsberg, Copartners Doing Business under the Firm Name and Style of Ginsberg Brothers, Respondents.

(180 N. W. 796.)

**Master and servant — master having knowledge of fellow servant's incompetency liable.**

1. Even in cases where the fellow servant rule is applicable, an employer is charged with the duty of exercising ordinary care in the selection of servants engaged in common service; and where he retains a careless or incompetent servant in his employment after a knowledge of such incompetency or carelessness, or when in the exercise of due care he should have known it, he is liable to any other servant who suffers injury through the unfitness of the careless or incompetent servant so retained.

**Master and servant — negligence, assumption of risk, and contributory negligence, questions for jury.**

2. In the instant case, wherein the plaintiff seeks to recover damages for injuries sustained while unloading a carload of scrap iron, which injuries he claims were occasioned by the negligence of a careless and incompetent fellow servant, whom defendants retained in their employ after knowledge of his carelessness and incompetency, it is *held* that the evidence adduced by the plaintiff established a prima facie case of actionable negligence against the defendants. It is *held*, further, that under such evidence the questions of assumption of risk and contributory negligence were for the jury.

Opinion filed December 2, 1920. Rehearing denied December 31, 1920.

Action for personal injuries in Grand Forks County, *Cole, J.*

From a judgment entered upon a directed verdict and an order denying a new trial, the plaintiff appeals.

Reversed.

NOTE.—That there is a well-established rule that a master is liable to his servant for an injury caused by the incompetency or want of skill of a fellow servant will be seen by an examination of the cases collated in a note in 41 L.R.A. 46, on master's constructive knowledge as to capacity of servants as element of liability to injured servant.

On assumption of risk by servant of dangers from employment of incompetent servant, see note in L.R.A.1916F, 1212.

*J. F. T. O'Connor* and *Svenbjorn Johnson,* for appellant.

A servant who is injured while obeying a direct command of his master does not assume the risk of such injury, nor is he guilty of contributory negligence in obeying the command. Mellette v. Indianapolis Northern Tract Co. 86 N. E. 433; Hagerty v. Evans, 87 Minn. 435, 92 N. W. 399; Van Duzen Gas & Gasoline Engine Co. v. Schelies, 61 Ohio St. 298, 55 N. E. 998; Illinois Steel Co. v. Schymanowski, 162 Ill. 447, 44 N. E. 876; Offutt v. World's Columbian Exposition, 175 Ill. 472, 51 N. E. 651; Western Stone Co. v. Musical, 196 Ill. 382, 89 Am. St. Rep. 325, 63 N. E. 664; Glucose Sugar Ref. Co. v. McDonnell, 132 Ill. App. 386; Fearington v. Blackwell Durham Tobacco Co. 141 N. C. 80, 53 S. E. 662; Bokap v. Chicago & A. R. Co. 123 Mo. App. 270, 100 S. W. 689; Buckner v. Stock Yards Horse & Mule Co. 221 Mo. 700, 120 S. W. 766; Adolff v. Columbia Pretzel & Baking Co. 100 Mo. App. 199, 73 S. W. 321.

The primary duty of the servant is obedience, and he cannot be charged with negligence in obeying an order of the master unless he acts negligently in so obeying. Rayburn v. Central Iowa R. R. Co. 35 N. W. 606; Sipes v. Michigan Stock Co. 100 N. W. 447; St. Louis v. Morris, 93 Pac. 153; Polaski v. Pittsburgh Coal Co. 14 L.R.A. (N.S.) 952, 114 N. W. 437.

*Murphy & Toner,* for respondents.

If the injury could not have been reasonably anticipated as the probable result of the act of negligence, such act is either a remote cause or no cause of injury. Crane Co. v. Busdicker, 255 Fed. 664; Homisett v. Light & P. Co. 81 So. 22; R. Co. v. Sears, 210 S. W. 684.

To constitute "actionable negligence" the injury must be a natural and probable consequence of the negligence complained of, and must be such that it should have been foreseen in the light of attending circumstances. Nichols v. Telephone Co. 109 Atl. 649; R. Co. v. Clement, 220 S. W. 407; Donald v. Coal Co. 103 S. E. 55; Hogan v. Bragg (N. D.) 170 N. W. 374; Bona v. Auto Co. 208 S. W. 306.

"If subsequent to the original negligent act a new cause has intervened, of itself sufficient to stand as a cause of the injury, the original negligence is too remote." Bergman v. R. Co. 178 Pac. 68; Northrup v. Eakes, 178 Pac. 266; Dreher v. Mill Co. 98 S. E. 194.

The law of contributory negligence forbids a recovery by one who by his own fault brings an injury upon himself. 29 Cyc. 506–508.

"Contributory negligence is a failure to exercise the degree of care for one's own safety usually exercised by reasonably careful and prudent men in the same circumstances, which failure causes or helps to bring about injury, a result which would not have occurred but for such failure." R. Co. v. Morgan, 192 S. W. 672; Taylor v. Bldg. Corp. 99 Atl. 284; Int. Harv. Co. v. Langermann, 262 Fed. 498.

The servant has the right to assume and to rely upon the assumption that the master has provided a reasonably safe place for him to work, unless such place is obviously and necessarily dangerous. Thompson v. R. Co. (S. D.) 132 N. W. 158; Nelson v. Martinson, 212 Fed. 912.

No recovery can be had for injuries received by an experienced carpenter who was a foreman on the work of constructing a building, for a fall received while crossing from one side of the building to another, using the bottom cord of a truss as a bridge, when he knew and fully appreciated the danger of using the cord, and there was a safe method of going to the other side. Boyer v. Eastern R. Co. (Minn.) 12 Am. Neg. Rep. 496; Hanley v. Grand Trunk, 62 N. H. 274; Seaboard Air Line R. Co. v. Horton, 233 U. S. 492; Cartwright v. R. Co. 228 Fed. 876; Kelly v. R. Co. 9 N. W. 816; Bradshaw v. R. Co. 21 S. W. 346; Carr v. Construction Co. 48 Hun, 266; Kennedy v. R. Co. 17 Atl. 7; Knittal v. R. Co. 33 Ohio St. 468; Bengeton v. R. Co. 50 N. W. 531; Weed v. R. Co. 99 N. W. 827; R. Co. v. Ryan, 29 S. W. 527; Norton v. R. Co. 30 S. W. 599; Liney v. R. Co. 49 N. W. 187; Berlick v. Co. 67 N. W. 712; Buckman v. Coal Co. 77 N. W. 889.

PER CURIAM. This is an action to recover damages for personal injuries alleged to have been received by the plaintiff while in the employ, and by reason of the alleged negligence, of the defendants.

The complaint alleges that the defendants are partners engaged in the business of collecting and distributing scrap iron in the city of Grand Forks in this state; that the plaintiff was employed. by the defendants as a laborer at their place of business, and that his duties consisted in helping to unload cars and to move and remove scrap iron; that on or about October 8, 1917, and for some time prior thereto, the defendants also had in their employ one Heine, who was engaged

in the same kind of work as that performed by the plaintiff; that on or about October 8, 1917, the plaintiff, while in the employ of the defendants, and while. engaged in discharging the regular duties of his employment, was injured while helping to unload a car of scrap iron; that such injury was occasioned by a very heavy piece of iron weighing about 900 pounds which fell upon him, as a result of which plaintiff's right leg was broken, and he sustained permanent injuries; that the accident occurred while the plaintiff and said Heine were engaged in unloading scrap iron from a freight car, and was caused wholly by reason of the negligence of the defendants, in this that said Heine had been in the employ of the defendants for several months, engaged in loading and unloading scrap iron; that said Heine was a grossly incompetent and generally careless worker; that said Heine during all the time that he was employed by the defendants was habit-ually negligent, careless, and incompetent; that he was unmindful of the danger to his coworkers and fellow servants, resulting from his careless and negligent manner of loading in, and in unloading from, freight cars, the heavy pieces of iron and steel; that he was unfit to work with others in unloading scrap iron; "that the said Heine was ill-tempered, became quickly irritated, and angered if the work did not proceed to his exact liking, that he frequently each day became very angry, and, when he did become angry, jerked pieces of iron and threw them around carelessly and negligently, and in total disregard of the danger to his fellow servants and coworkers incident to such con-duct; that on the day and date and at the moment when the injury aforesaid occurred, the said Heine was in a fit of anger and rage, and, while in such fit of anger and rage, so handled the piece of iron which fell upon this plaintiff that it slid upon the plaintiff and caused the injury aforesaid; that because of the negligence and carelessness of the defendants in employing the said Heine, who himself was grossly incompetent and habitually careless and of a violent disposition, the plaintiff suffered injuries as aforesaid; that said iron was so negli-gently and so carelessly handled by the said Heine that it was caused to negligently and carelessly slide upon the plaintiff and cause the in-juries hereinbefore described.

The answer admitted the employment of the plaintiff by defendant; also, that he was injured while in their employ, and engaged in un-

loading a car of scrap iron. It is averred, however, that the injuries were slight and that plaintiff has fully recovered. It is further averred that the injuries "were caused through the carelessness and contributory negligence of the plaintiff himself," and that he "assumed the risk of injury and consequent damages of the character described in the complaint."

At the close of plaintiff's case the defendants moved for a directed verdict on the ground "that the plaintiff has wholly failed to establish the material allegations of the complaint." The motion was granted, and the plaintiff has appealed from the judgment and from the order denying his motion for a new trial.

Under the statutes applicable to this case, "an employer must in all cases indemnify his employee for losses caused by the former's want of ordinary care." Comp. Laws 1913, § 6108. But "an employer is not bound to indemnify his employee for losses suffered by the latter in consequence of the ordinary risks of the business in which he is employed, nor in consequence of the negligence of another person employed by the same employer in the same general business, *unless he has neglected to use ordinary care in the selection of the culpable employee.*" Comp. Laws 1913, § 6107.

Labatt (Labatt, Mast. & S. § 1079) says: "The obligation of a master to see that the servants hired by him possess the qualifications mental, moral, and physical, which will enable them to perform their duties without exposing themselves and their coemployees to greater dangers than the work necessarily entails, are, in their broad features, similar to the obligations which are incumbent upon him with regard to the other agencies of his business. It is manifest, however, that, in their specific application to human beings, the general principles which define the nature and extent of these obligations must assume a shape somewhat different from that which they bear in their relation to the lower animals, or to inorganic instrumentalities. It is, in fact, apparent that the duty of a master to use care in hiring servants is very closely associated with, if not a special form of, his duty to adopt a safe system in the conduct of his business; that is to say, the duty of seeing that the unreasoning agencies used by him perform their functions. The rule established by the cases . . . may be stated in formal terms as follows: The hiring or retention of a serv-

ant whose unfitness for his duties, whether it arises from his want of skill, his physical and mental qualities, or his bad habits, is known, actually or constructively, to the master, is culpable negligence, for which the master must respond in damages to any other servants who may suffer injury through that unfitness. The essential ground upon which the liability thus predicated is based is that 'the master impliedly contracts that he will use due care in engaging the services of those who are reasonably fit and competent for the performance of their respective duties in the common service.' "

In considering this question the supreme court of Maine said: "The same care requisite in hiring a servant in the first instance must still be exercised in continuing him in the service; otherwise, the employer will become responsible for his want of care or skill. The employer will be equally liable for the acts of an incompetent or care-less servant, whom he continues in his employment after a knowledge of such incompetency or carelessness, or when, in the exercise of due care, he should have known it, as if he had been wanting in the same care in hiring." Shanny v. Androscoggin Mills, 66 Me. 420, 15 Am. Neg. Cas. 264. Similar language has been used by many other courts. See authorities cited in Labatt, Mast. & S. §§ 1079 et seq.

(1) Was the plaintiff injured in consequence of the negligence of Heine?

(2) Did the defendants neglect to use ordinary care in the retention of Heine in their employment, as a co-employee of the plaintiff?

If the evidence adduced upon the trial was of such nature and probative force that reasonable men, in the exercise of judgment and reason, might reasonably have answered both of these questions in the affirmative, then they should have been submitted to the jury as questions of fact.

After a careful consideration of the evidence a majority of the court have reached the conclusion that there was substantial evidence tending to establish affirmative answers to both of these questions. There was evidence tending to establish the following facts: The defendants are junk dealers at Grand Forks. The plaintiff, who is about sixty years of age, was employed by defendants in the summer and fall of 1917. His duties consisted in handling scrap iron, and in loading and unloading carloads thereof. Among the many men employed

by the defendants was one Heine. There is evidence to the effect that he was a careless and incompetent employee; that he was very excitable, and at times would fly into violent fits of rage when anything went wrong with his work; that at times when the wheelbarrow in which he was moving scrap iron upset he threw pieces of iron around in such manner as to endanger others working near him; that on at least one occasion he did, while in such fit of rage, throw a piece of iron which struck one of the other workmen. There was, also, evidence to the effect that the other workmen employed by the defendants frequently discussed Heine's carelessness and incompetency among themselves, and that some of these conversations took place in the presence of one of the defendants. There is also evidence that the foreman, St. George, had notified the defendants of the carelessness and incompetency of said Heine; also, that the plaintiff had made complaint to the defendants of such carelessness and incompetency, and indicated that he did not desire to work with Heine on account of his said incompetency and carelessness.

St. George testified:

Q. Mr. St. George, did you at any time say anything to either of the Ginsbergs before the accident about Heine and his work there in the yards?

A. Yes; I did.

Q. You may state what that was, what you said?

A. I remember telling them the men would not work with him he was careless. . . . I told him, they didn't want to work with him because they were afraid of him is all.

The plaintiff testified:

Q. Now, I ask you, Mr. Hennessy, whether or not you ever said anything to the defendants, or either of them, about Heine's disposition and method of working?

A. Yes, sir.

Q. You may state what you said and to whom?

A. Well, I told Charles himself that I wouldn't work with Heine any longer. . . . Charles Ginsberg, I says, "He is a reckless little bugger and I don't want to work with him," and Charles says, "Mike, pick out any man in the yard you want," and I picked John Foster.

Q. When did you tell Charles this?

A. About four weeks before this accident.

Q. Did you work with Heine after that until the day of the accident?

A. Not until it happened that way. . . .

Q. I ask you, Mr. Hennessy, whether or not you ever heard any of the men that were working there make any complaint or say anything to either Harry or Charles Ginsberg about Heine's method of work and his disposition before this accident happened?

A. I often heard men tell Charles.

Q. Tell us what you heard them tell him?

A. That Heine was a reckless little bugger and they wouldn't work with him.

Q. Do you remember what, if anything, Charles said?

A. Oh, Charles said, Charles says, "I guess he is a little devil."

On October 7, 1917, the plaintiff, while at his work at defendant's place of business, was directed by one of the defendants to proceed together with Heine to unload a box car of scrap iron.

The plaintiff testified:

About 4 o'clock Charles (Ginsberg) hollered down to me to go on up, me and Heine, and start at this box car or he would have to pay demurrage on it; he said it was there so long and he wanted us to start at it to save demurrage, so we went on up and started at this car, and this casting was against the door and we couldn't get it open, so there was another fellow there, Ed. Heinsing, and I says, "Ed, give us a push here on this car door,"—so Ed, he was wheeling away truck from the ground, scattered stuff,—so Ed and me with Heine, the three of us got room enough for Heine to get in the car. Now, I says, "You go in Heine, you are the smallest, and open the top and me and Ed will push at the bottom." So the car door went even, when he was up there it went along and we got it open, and then this casting was crosswise in the door, and we had to pry it one way or the other. So I pried it towards Heine so it would pass the door, and I was on the ground and Heine in on the top at the other end, and I kept working it up towards him, and he was taking it kind of slow, and I says, "What is the matter up there, Heine, you are not *taking this around* very fast," he says, "I

can't get room for my feet," and he was jumping around there. So then I kept pushing, and I says, "Now, watch out, Heine, when it goes don't you raise it, only tilt it so till I get out of the way, give me a chance to get out;" I was right like this with the door, working it this way. [indicating], and I got it past there so it come this way, and I hollered, "Now, look out Heine," I says, "It is pretty near ready to go," and it was just coming this way, And he says, "Damn," and gave it a tilt on the other end, and it come down and took me in the leg. . . . I had to pry towards Heine so we could get it past where I was working, get it up that way far enough so I could work it out. . . .

Q. Stand up here and treat this as the door of the car and show them just where you stood.

A. I stood right here [indicating] and I had to work it that way so it would pass and come out here, and Heine was at the other end, and I had to keep prying and working, and he was working at the other end, I would push it to him, and I kept telling Heine all the time, "Look out now, be careful," and I kept watching my end, and when I got it out just as it would pass I says, "Look out now, Heine, be careful," and he says, "Damn," and gives it one tilt and it come out.

Q. When you heard Heine say "Damn it," about how soon afterwards did the iron come out?

A. I don't know how quick it was; I don't remember anything; the iron was on me as soon as he swore.

On cross-examination he said: "Just as soon as I got it out I says, 'Now, look out Heine,' and he gave it a tilt and it come down on me. *He had to shove it out; it wouldn't come out without being shoved out."*

The foreman, St. George, testified that shortly after the happening of the accident he went over to the office and reported the matter to one of the defendants; and that such defendant then said: "I knew that this is what would happen, that he (Heine) would do something like this."

This evidence we believe is such that it cannot be said, as a matter of law, that plaintiff's injuries were not suffered in consequence of the neglect of the defendants to use ordinary care in the selection of Heine as plaintiff's co-employee.

There can be no question but that there is abundant evidence tending to prove that Heine was a reckless, and unfit workman, and that the

defendants had knowledge of this fact. We also believe that there is evidence tending to show,—evidence of such nature that reasonable men might find,—that the plaintiff's injuries were occasioned by the careless and negligent acts of Heine.

The casting was so situated that it was necessary to move it in order to get it out through the door of the car. Plaintiff was trying to pry the casting so that one end would come into the doorway. Heine was at, and apparently had hold of, the other end of the casting. Plaintiff speaks of Heine "taking this around." Plaintiff says that he cautioned Heine that when the casting *"goes"*—(apparently what plaintiff meant was that when he had succeeded in getting the casting shoved back far enough so that the end would be released from where it was pressing against the door jamb) *"don't you raise it, only tilt it so till I get out of the way, give me a chance to get out."* Plaintiff further says that the casting "wouldn't come out without being shoved out;" that "he (Heine) had to shove it out." Plaintiff further says that Heine did exactly what he (the plaintiff) had cautioned him not to do,—raised the casting and shoved it so that it came out and fell upon plaintiff without giving him any opportunity to get out of the way. There is abundant evidence tending to show that plaintiff suffered severe injuries as a result of accident.

We are of the opinion that the evidence adduced by the plaintiff. established a prima facie case of negligence, and cast upon the defendants the burden of overthrowing it by a successful defense. Northern P. R. Co. v. Mares, 123 U. S. 710, 31 L. ed. 296, 8 Sup. Ct. Rep. 321. See also Lee v. Michigan C. R. Co. 87 Mich. 574, 49 N. W. 909.

The defendants contend, however, that the plaintiff was guilty of contributory negligence, and that he assumed the risk of the injuries which he sustained, and that for these reasons he is precluded from recovery. It is well to remember that these are affirmative defenses which the defendants have the burden of establishing, and that the verdict in this case was directed at the close of plaintiff's case and before the defendants had put in any evidence whatsoever.

We do not believe that, upon the evidence adduced, the court could say as a matter of law, either that the plaintiff assumed the risk of the injuries, or that he was guilty of contributory negligence. Ordinarily these are questions for the jury. They can be withdrawn from the jury

only when the facts established by the evidence are such that reasonable men, in the exercise of reason and judgment, can reach only one conclusion. If the facts are such that different, impartial minds may fairly draw different conclusions from them, they should be submitted to the jury.

From the evidence above quoted, it will be noted that there was a positive order given by one of the defendants to the plaintiff and Heine to proceed to unload a *specific* car containing scrap iron. The defendant also stated that unless this was done defendants would be subjected to financial loss;—i. e., they would have to pay demurrage. The defendant who gave this order was the same one who had been notified by the plaintiff and by the other workmen of the carelessness and recklessness of Heine. The plaintiff had no means of knowing the character of the scrap iron in the car until it was opened. In order to get the door open it became necessary for Heine (who apparently was a small man and for that reason able to effect an entrance) to go into the car. The first thing that became necessary to do, after the door was opened, was to remove a certain casting. The casting, according to the plaintiff's testimony, was so situated that it would not have fallen out unless Heine shoved it out. The plaintiff gave positive instructions to Heine not to raise the casting. Even though Heine was known by the plaintiff to be of a reckless and careless disposition, it can hardly be said, as a matter of law, that the plaintiff could reasonably have anticipated that Heine would, in direct violation of plaintiff's repeated warnings, proceed to shove out of the car and in effect cast upon the plaintiff a piece of iron weighing some 800 to 1,100 pounds.

The doctrine of assumption of risk rests in contract. The conception underlying the doctrine is that, in contracting to perform certain work, the servant, as an implied part of the agreement, assumes and accepts responsibility for any bodily hurt resulting from the "ordinary risks" incident to the work which he has agreed to perform. In determining whether an injury suffered by a servant is one of those perils which he assumed as a part of his agreement to perform certain work, all the circumstances must be considered, including, in cases like the present, the servant's orders. The plaintiff was not injured while voluntarily engaged in carrying out a general direction as to work. He was injured while obeying a specific command. That command was the oper-

ative influence which led him to do the act and to employ the means which directly caused the injury. Under all the circumstances, we do not believe that a court can say, as a matter of law, that the plaintiff assumed the risk of the injuries which he sustained. Labatt, Mast. & S. p. 3927. The doctrine of contributory negligence rests in tort; i. e., an omission of duty. It is predicated on the theory that the servant, in performing his work, was guilty of imprudence, and that this imprudence, or lack of care, was entirely or partially the cause of his injury.

In determining whether a servant is guilty of contributory negligence "all the circumstances of his position should be regarded, including, in cases like the present, the servant's orders, the demands of his duty, the apparent risk to be met, and the purpose of his action, no less than his physical surroundings. Having weighed all these considerations, unless the case then discloses that the risk was such as would not be taken by a man of common prudence, so situated, the court cannot justly declare that the taking of that risk by the servant, in obedience to orders, was negligence. The practical result of such a doctrine, when stated in terms of the servant's knowledge, is that the servant may maintain an action, unless he not only knows what is the risk to be encountered, but also that it will probably be attended with injury which he cannot avoid by the exercise of care and caution." Labatt, Mast. & S. pp. 3930–3933. We do not believe that the evidence in this case shows, as a matter of law, that plaintiff was guilty of contributory negligence.

It follows from what has been said that the trial court erred in directing a verdict in favor of the defendants at the close of plaintiff's case. For this reason alone the judgment and order appealed from must be reversed and the cause remanded for a new trial. It is so ordered.

CHRISTIANSON, Ch. J., and BIRDZELL, J., concur.

GRACE, J. (specially concurring). This action is one to recover damages for injuries alleged to have been caused by the negligence of the defendants, the nature of which is alleged in the complaint. The defense is contributory negligence and assumption of risk.

We presume, under our statutes, in that regard, those defenses are

available to defendants. The statutes are, as we view the matter, largely declaratory of the common-law doctrine in regard to those subjects. It is very questionable whether it can be said that the common-law rule is based upon any clear principle of justice and right.

Quite an extensive discussion in this regard is contained in the case of Peterson v. Fargo-Moorhead Street R. Co. 37 N. D. 440, 164 N. W. 42. However, considering the question of assumption of risk and contributory negligence proper defenses, under our statutes, in the circumstances of this case it is clear that they are questions of fact for the jury.

Whether defendant neglected to use ordinary care in retaining the services of Heine, and whether plaintiff was injured by the latter's negligence, were, we think, in the state of the evidence, questions of fact for the jury.

BRONSON, J. (dissenting). The gist of plaintiff's cause of action is that the defendants employed an incompetent fellow servant by reason whereof he was injured. The defense is lack of negligence in that regard, contributory negligence and assumption of risk on the part of the plaintiff. At the close of plaintiff's case the trial court, upon a motion of the defendant, directed a verdict in favor of the defendant. The verdict so rendered, and the judgment entered thereupon, operated as an adjudication upon the pleadings and the evidence submitted. Unquestionably, upon this record, if, as a matter of law, there was no negligence of the defendants that proximately caused the injuries, or, if the plaintiff either was guilty of contributory negligence, or assumed the risk, the trial court did not err in so directing a verdict. Although the defenses of contributory negligence and assumption of risk are affirmative defenses, nevertheless it is clear that the defendant was entitled to avail himslf upon such motion or for a directed verdict, if the record discloses as a matter of law that plaintiff's cause of action was barred, either by his contributory negligence, or, by his assumption of risk. I am of the opinion that, upon this record, there were no questions of fact to be submitted to the jury upon which reasonably prudent men might differ concerning the defendants' negligence, and the contributory negligence or assumption of risk on the part of the plaintiff. I am further

46 N. D.—16.

of the opinion that upon this record the majority opinion in so far as it holds that there are questions of fact in this regard practically abrogates the application of the doctrine of assumption of risk. There is no question that, in the relation of the parties to this action, the fellow-servant rule and the doctrine of assumption of risk apply. It is deemed unnecessary to set forth in detail the evidentiary facts as appearing in this record. Some of them have been recited in the majority opinion. It is sufficient to state that the following facts, in my opinion, appear established in this record, to wit:

1. The plaintiff worked for the defendants as a common laborer from the month of May, 1917, up to the time he was injured on October 7, 1917; his duties consisted in unloading scrap iron; sometimes in loading cars or unloading cars; also in breaking up scrap iron.

2. The plaintiff knew, during the summer, Heine, the alleged incompetent servant; he came there to work after the plaintiff did; he observed him at work lots of times; he knew that Heine would get rattled and fling things around; that he would get angry or mad and swear; he told one of the defendants about it, and said that he would not work with Heine any longer. He told such defendant that he did not want to work with him, and that defendant said for him to pick out any man in the yard he wanted and he picked one John Foster; he did not work with this man Heine after that until the day of the accident.

3. Nevertheless, on the day of the accident and before the accident, this plaintiff, without any direction so to do, as far as the record is concerned, was working with this Heine. He was on top of a steam threshing machine. Heine was picking up and wheeling away, with a wheelbarrow what the plaintiff knocked off. In the afternoon one of the defendants directed the plaintiff and Heine to start work at the box car where the accident occurred, because he wanted to have it unloaded so as to save demurrage.

4. The plaintiff then proceeded to the box car. He requested the aid of another man, named Ed Heining. They got the box-car door open and room sufficient for Heine to get within the car. He directed Heine to get into the car and to open the top, and that he and this Ed Heining would push out the bottom. There was a casting crosswise in the door. It had to be pried one way and the other. The plaintiff pried it towards Heine so it would pass the door. He kept working

it up towards him. Heine was taking it kind of slow, and the plaintiff said, "You are not getting this around very fast." Further evidence in this regard is recited in the majority opinion. The plaintiff, on the ground, was working one and past the door and the man Heine, within the car, was swinging around the other end for the casting to come out. The plaintiff testified that he told Heine it was pretty near ready to go. That Heine said, "Damn," and gave it a tilt on the other end, and it came down and took him in the leg. This casting projected on each side of the car door about 8 inches. It was a big piece of casting, weighing some 800 pounds. The car was loaded about half full. The plaintiff had a bar and was prying this casting to get the end of it around the jamb of the door so he could get it out. The other end was higher and lying upon some scrap iron that was holding it. Before this time the plaintiff had unloaded cars of scrap iron containing castings as big as the one in question. It was customary to do this unloading with two men.

5. Evidence concerning the incompetency of this man Heine is stated in the majority opinion.

If it be conceded that there is evidence in this record that the defendants employed and retained this man Heine, an incompetent fellow servant, it was necessary, nevertheless, to establish in the record that his incompetency was the proximate cause of the injuries sustained. 26 Cyc. 1302. What evidence in the record forms a question of fact for the jury that the incompetency of this man Heine occasioned this injury or proximately caused it?

Assuredly, the act of Heine in tilting this casting as he was directed by the plaintiff to do was not an act of incompetency or the result of his incompetency as a fellow servant. He was doing exactly as the plaintiff had requested him to do. Again the fact that he uttered the word "damn" in connection with this work in trying to pry this casting does not demonstrate, or afford any proof, that this was an incompetent act that proximately caused the injury. Further there is no evidence in this record that this man Heine did push this casting out upon the plaintiff. It is true that the plaintiff testified that Heine had to shove it out, for it would not come out without being shoved out. This was his mere conclusion. He was upon the ground, Heine was within the car. All that the evidence discloses is that Heine was tilt-

ing this casting as he was directed by the plaintiff to do. This was not evidence of Heine's incompetency, rather, if evidence at all, evidence of plaintiff's own incompetency and negligence.

The most that can be said from the testimony of the plaintiff himself is that this man Heine, while trying to get a foothold and trying to work on this casting within the car, used the word "damn," gave the casting a tilt; it came out and injured the plaintiff. Furthermore, the evidence clearly discloses as a matter of law, in my opinion, both contributory negligence and assumption of risk on the part of the plaintiff. Voluntarily, this plaintiff was working with this man Heine before he was directed by the defendant to proceed to unload this car of scrap iron. Then for many months he had known, fully better than the defendant, the incompetency of this man Heine as he testified and as other witnesses testified. While working with this man Heine, one of the defendants directed them to unload this car of scrap iron. Without objection, and without complaining about working with this man Heine, the plaintiff proceeded so to do. In unloading such scrap iron the plaintiff was the director general in the proceedings had. He was the boss on the job, as the testimony well discloses. He directed what each man should do, where Heine should go and what he should do. Assuredly, it appears, as a matter of law, that the injuries sustained by the plaintiff were the result of his own negligence and risks then assumed or created by him. The risk in this work of so unloading the casting, to which the plaintiff was subjected, was a risk created by the plaintiff, and not by the defendants. The risk of directing the man Heine to go within the car and to tilt this casting was a risk that the plaintiff created by his own direction. It was one that he assumed by his own direction, and through the position where he placed himself; it was a risk, likewise, that he could have obviated by his own direction.

In my opinion the trial court did not err in directing a verdict, and its order should be affirmed.

ROBINSON, J., concurs.

On Petition for Rehearing.

PER CURIAM. Defendants have petitioned for a rehearing. In the petition for rehearing it is said: "I contend that the court has wholly

overlooked § 6107, Comp. Laws 1913, although it is quoted in the opinion." That section provides in plain language of unmistakable meaning that *"an employer is not bound to indemnify his employee* for losses suffered by the latter . . . in consequence of the negligence of another person employed by the same employer in the same general business, unless he has neglected to use ordinary care *in the selection* of the culpable employee." This section is in the Civil Code of this state, and § 4331, Comp. Laws 1913, at the beginning of that Code provides that "in this state there is no common law in any case where the law is declared by these Codes."

The common-law rule is that a master must use the same care *in retaining a servant after he has hired* him, as he must use in hiring him in the first place. Clearly the rule under our statute in this particular is not the same as the common-law rule, for the statute by *exclusion* specifically says that the master shall *not* be liable for retaining a careless employee unless he was negligent in the first place in hiring him. Hence there is no object in citing the common-law rule in support of an adverse opinion on this point, because it will not bear analysis.

It will be noted that it is the contention of the defendants that the legislature, in enacting § 6107, Comp. Laws 1913, intended to and did provide a rule even more harsh (from the standpoint of the servant) than the common-law rule. If the statute means what defendants contend it means, then a master may, if he uses due care in hiring a servant, retain such servant regardless of how incompetent and unfit he may subsequently be demonstrated to be, and the master will not thereby violate any duty which he owes to the other servants employed by him as co-employees of such unfit servant. The defendants in effect contend that the word "selection" must be construed to be synonymous with and to mean "hire." We believe the contention to be wholly unfounded. Section 6107, supra, must be read in connection with the sections which precede and follow it. Section 6106, Comp. Laws 1913, reads: "An employer must indemnify his employee, except as prescribed in the next section, for all that he necessarily expends or loses in direct consequence of the discharge of his duties as such or of his obedience to the directions of the employer, even though unlawful, unless the employee at the time of obeying such

directions believed them to be unlawful." Section 6108 reads: "An employer must, in all cases, indemnify his employee for losses caused by the former's want of ordinary care."

These statutes (§§ 6106–6108) recognize that the master owes certain duties to his servants. That, among others, it is the duty of the master to use ordinary care in the selection of servants employed by him. This duty—like the duty to furnish reasonably safe and suitable appliances with which, and a suitable place in which, to work— is a continuous one. Labatt, Mast. & S. §§ 1079, 1009, et seq.

It may be noted that § 6107, Comp. Laws 1913, as well as §§ 6106 and 6108, were originally taken from California. See Cal. Civ. Code, §§ 1969–1971. In Gier v. Los Angeles Consol. Electric R. Co. 108 Cal. 129, 41 Pac. 22, the same contention was advanced as that now advanced by the defendants in their petition for rehearing, but the supreme court of California refused to construe the statute in the manner suggested, and held that "lack of ordinary care may as well be shown by the retention of an unfit employee after knowledge of the fact, as by failure to use due diligence at the time of his selection, and in either case the liability of the employer attaches." 108 Cal. 133.

We adhere to the construction which we placed upon the statute in the former opinion.

It is also contended that we erred in holding that, under the evidence, the questions of contributory negligence and assumption of risk were for the jury. Further consideration of this question has not altered the views which we entertained and expressed in the former opinion.

A rehearing is denied.

CHRISTIANSON, Ch. J., and GRACE and BIRDZELL, JJ., concur.