### Mattoon City Railway Company v. Daniel Graham.

1. MASTER AND SERVANT—*duty of former to regulate time and manner of running trains.* It is a duty which the master owes to his servants to use reasonable care so to regulate the time and manner of running its cars that those of its servants who were engaged in operating them would be informed as to times and places and manner where and in which the same should meet and pass in order that collisions might be avoided.

2. ASSUMED RISK—*when doctrine of, inapplicable.* The doctrine of assumed risk has no application where the servant acts pursuant to an express order of his master. If, however, such servant, in obeying such order, is reckless, the doctrine of contributory negligence applies.

3. VERDICT—*when not excessive.* A verdict for $5,000 rendered in an action for personal injuries is not excessive where it appears that at the time of the injury the plaintiff was thirty-

three years of age, sound in health and limb, six feet tall and weighed 298 pounds; that he received a wound in his forehead extending from the hair to the eye which left a scar; that his entire left side was bruised and skinned, his leg and ankle twisted and his foot jammed; that he suffered and continued to suffer up to the time of the trial much pain and became unable to walk without the aid of crutches, and that a chronic tuberculosis condition, which may ultimately cause his death, exists in his foot.

Action in case for personal injuries. Appeal from the City Court of Mattoon; the Hon. HORACE S. CLARK, Judge, presiding. Heard in this court at the May term, 1907. Affirmed. Opinion filed December 7, 1907.

H. M. STEELY and ANDREWS & VAUSE, for appellant.

BRYAN H. TIVNEN, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in case by Daniel Graham against the Mattoon City Railway Company to recover damages for personal injuries sustained by the plaintiff, a motorneer in the employ of the defendant, through the alleged negligence of the defendant in the operation of its electric railroad. The jury returned a verdict in favor of the plaintiff and assessed his damages at $5,000. Motions by the defendant for a new trial and in arrest of judgment were overruled. From the judgment rendered upon said verdict this appeal is prosecuted by the defendant. At the close of the plaintiff's evidence and again at the close of all the evidence, the court refused to direct a verdict for the defendant. The first count of the declaration as finally amended avers that the defendant owned and operated a single track railroad, and cars thereon, propelled by electricity, conveying goods and passengers, and maintained a switch east of Mattoon known as Jones switch; that it had in force a schedule or time table providing for the movement of all its regular trains, said schedule not covering irregular, special or extra trains; that while defendant was moving its train

No. 11, in a direction from east to west, from Charleston to Mattoon, which train was one of the regular and scheduled trains aforesaid, the plaintiff, as defendant's motorman, by servants of defendant not fellow-servants, of plaintiff, was carelessly and negligently ordered to take a special irregular or extra car No. 18, not shown upon said time table or schedule, and proceed from Mattoon to Jones switch, and there meet said regular car No. 11, without notice to the servants on No. 11 of said order and directions to the plaintiff, or of the presence or approach of the plaintiff in time to avoid the danger; that while said servants in charge of both said cars, were exercising reasonable care and caution, proceeding from opposite directions toward each other, before plaintiff had reached Jones switch, because of defendant's negligence aforesaid, the said cars collided, and plaintiff was injured, etc.

The third additional count contains the same averments as in the first count and in addition thereto avers that the defendant negligently failed to adopt any reasonably safe system or method whereby said cars might be operated with reasonable safety from collision one with the other, and whereby reasonable notice might be given to those operating each of said cars, of the presence and movement of each other upon said single track, within a time reasonably sufficient to avoid a collision between said cars.

The fifth additional count charges that the plaintiff was ordered to meet No. 11 at Jones switch, and that defendant disregarding its duty to give plaintiff a clear way to said meeting point, free from opposing trains, and to exercise reasonable care and caution, was executing his orders, proceeding to said meeting point, and before he had arrived at Jones switch, defendant negligently permitted No. 11 to be driven against him, and failed to exercise reasonable care for safety of plaintiff, and by means of defendant's negligence in that regard, the collision and injury occurred.

Appellant operates an electric railway running east and from Mattoon to Charleston, a distance of about twelve miles. About seven blocks east of the starting point in Mattoon is a switch called Banana siding. One and three-quarters miles east thereof is another switch called Jones switch, further east is a station called Loda, which is about six miles from Mattoon, and still further east is Urban Park, at which baseball games were played upon several days of the week during the summer. Midway between Banana siding and Jones switch the track curved north for the distance of 1,325 feet, following which the track was straight for 375 feet and then again curved for about 1,615 feet. Two cars were regularly operated on the line which made the trip between the two cities in about thirty minutes. Car No. 11, in charge of one Holmes, was scheduled to leave Charleston for Mattoon at 1:45 P. M., and car No. 12, which was appellee's regular car, to leave Charleston at the same hour.

On the day in question appellee was relieved of his regular run and assigned to run an extra car, No. 18, to Urban Park for the accommodation of persons who desired to attend a baseball game which was to be played there that day. The usual time from Charleston to Jones switch was about twenty minutes, and from the latter station to Mattoon about ten minutes. Appellee was directed to meet No. 11 at Jones switch, but the crew in charge of No. 11 were not notified in any way of the running of the extra car nor were they given any orders or directions as to a meeting point. The extra car left Charleston from five to fifteen minutes after two o'clock. Upon the stretch of straight track, the extra car met and collided with No. 11 coming from the east.

Appellee testified that when he first saw No. 11 it was about 150 yards distant, coming around the east curve; that his car was running at about forty miles an hour; that he at once shut off the power and applied the air brakes reducing the speed at the time

of the collision to about seven or eight miles an hour. As the cars came together appellee jumped from his car and sustained the injuries complained of in the declaration.

The evidence further shows that the appellant company had no published rules governing the running and management of its cars other than a time table for the regular cars. That the superintendent had sole charge of the movement of trains and that he was in the habit of issuing orders, occasionally in writing, but frequently verbally, and at such times and places as suited his convenience, and that there was no designated time or place at which orders were regularly issued or when and where employes were required to report for the same. It was the manifest duty of appellant toward its employes to use reasonable care to so regulate the time and manner of running its cars that those of its servants who were engaged in operating them would be informed as to times and places and manner where and in which the same should meet and pass in order that collisions might be avoided. Darrigan v. Ry. Co., 52 Conn. 285; Sheehan v. Ry. Co., 91 N. Y. 332; Ry. Co. v. McLallen, 84 Ill. 109; R. R. Co. v. Mix, 121 Fed. Rep. 476. The failure of appellant to advise those in charge of No. 11 of the presence of the extra car upon the track and as to when and where it should meet and pass the same, clearly constituted a breach of such duty. The extraordinary hazard encountered by appellee was obviously not one incident to his employment. R. Co. v. Snedaker, 223 Ill. 395. He was expressly ordered to meet No. 11 at Jones switch. It was his duty to obey such order, and he had the right to assume that appellant, with its superior knowledge of the situation, would not expose him, his fellow-employes and the passengers upon the cars, to unnecessary peril, and to rest upon the assurance that there was no danger which is implied by such order. Whether with such knowledge as he may have possessed as to the mode

and manner of operating extra cars, in obeying the order he acted as an ordinarily prudent person would have under similar circumstances, affects the question of contributory negligence rather than that of assumed risk. Springfield B. & M. Co. v. Parks, 222 Ill. 355. The question of assumed risk was therefore not involved in the case, and appellee's first instruction is not subject to the objection held to be well taken to a similar instruction in the case of Terra Cotta Lumber Co. v. Hanley, 214 Ill. 243. Furthermore, appellant's third and eighteenth are substantially of the same import and it is thus estopped to complain. R. Co. v. Ricker, 116 Ill. App. 434. Nor were appellee's injuries the result in whole or in part of the negligence of a fellow-servant. The evidence does not disclose that Holmes was in any way negligent. The superintendent was clearly a vice-principal. The proximate cause of the accident was the negligence in the performance of a duty which cannot be delegated. Whether or not appellee was in the exercise of due care in obeying the order to take the car out, and at and prior to the time of the collision, was an issue to be determined by the jury. While the evidence as to the speed with which he was running and the manner he managed his car at the time and immediately prior to the collision, was to some extent conflicting, we think that the finding of the jury upon that issue was warranted.

We do not think that the damages awarded are excessive. There is evidence tending to show that at the time of the collision, plaintiff was thirty-three years of age, sound in health and limb, six feet tall and weighed 298 pounds; that he received a wound in his forehead extending from the hair to the eye which left a scar; that his entire left side was bruised and skinned, his leg and ankle twisted and his foot jammed; that he suffered and still suffers much pain and is unable to walk without the aid of crutches; that a chronic tuberculosis condition, which may ultimately cause his

death, exists in his foot, which the evidence tends to show was greatly aggravated by the injury received; that he is reduced in weight 115 pounds; that he has been unable to work since he was injured, and that prior thereto he earned $11 per week.

We are of opinion that the declaration sufficiently stated a cause of action and that the motion in arrest of judgment was properly overruled. The rulings of the court upon the instructions were substantially correct.

We have carefully considered the remaining grounds for reversal urged by appellant and are of opinion that the same are not well founded, and that the record is free of error that could have been prejudicial to appellant.

The abstract filed by appellant is not such as is contemplated by the rules of this court and the cost of the additional abstract furnished by appellee will be taxed to appellant.

The judgment of the Circuit Court should be and is affirmed.

*Affirmed.*