[No. 7389.  Decided July 29, 1908.]

DONALD JOHNSON, *Appellant*, v. MOTOR SHINGLE COMPANY, *Respondent*.[1]

MASTER AND SERVANT—ASSUMPTION OF RISKS—SAFE PLACE—STARTING MACHINERY WITHOUT WARNING.  An inexperienced employee directed by an acting foreman to lift up a bull chain used to drag logs from the pond, for the purpose of making repairs, does not assume the risks from the starting of the chain by the drag sawyer, as he had a right to assume that proper notice would be given the sawyer and the place kept safe by withholding further movement until the repairs were made.

SAME—VICE PRINCIPALS.  A saw filer in a mill, who assumed the duties of foreman on a day when the latter was absent, must be held to be a vice principal until the contrary is shown.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered February 27, 1908, upon granting a nonsuit at the close of plaintiff's testimony, in an action for personal injuries sustained by an employee in a sawmill. Reversed.

*Fred H. Peterson* and *H. C. Force*, for appellant.

*R. S. Eskridge* ( *L. Arnold*, of counsel), for respondent.

HADLEY, C. J.—This is an action to recover damages for personal injuries.  At the close of the plaintiff's testimony a nonsuit was granted.  The plaintiff appeals.

The facts appearing in evidence are substantially as follows:  The appellant went to work in respondent's mill in July, 1907.  On the day he began, the regular foreman was away.  He was directed by a man named Henderson to fasten logs to the bull chain, so that they might be hauled from the water up the chute into the mill.  Appellant is a young Swede who had been in this country but eight months at the time of his said employment.  His knowledge of the English

[1]Reported in 96 Pac. 962.

language was imperfect. He had previously worked in a mill yard, but had never performed the class of work at which Henderson put him. The work required the driving of so-called "dogs," being heavy hooks or clasps, into the logs in the boom at the foot of the chute. Chains called "dog chains" were fastened to these dogs, and after attaching the dogs to the logs, it was appellant's duty to attach the chains to the bull chain so that the logs might be drawn up to the drag saw where they were cut into suitable lengths. The movement of the bull chain was controlled by the drag sawyer, who could not see the appellant down at the water's edge. Ordinarily the ·bull chain was kept going continuously through the day, except when stopped by the drag sawyer to cut the logs into the required lengths. This occasioned frequent starting and stopping of the chain. The movement of the chain was slow, and with ordinary care, the dogs· could be safely fastened into the logs and the chains into the bull chain while the latter was in motion. In the afternoon of the first day that appellant worked at this place, one of the iron plates which protected the groove in which the bull chain ran came loose, and Henderson directed the appellant to lift up the chain over the plate, so that the latter might be readjusted. The direction was given at a time when the chain was not in motion and appellant, having lifted the chain, was holding it, when it began to move, and caught his hand, crushing his finger. The drag sawyer, not having been notified of appellant's situation and not being able to see him, started the chain, and immediately after appellant's hand was caught, Henderson notified the drag sawyer, who thereupon stopped the chain.

Upon the foregoing facts, the trial court held that appellant assumed the risk of the danger, for the reason that he must˙have known as well as the master that the chain was liable to move at any time. We think it does not appear, as a matter of law, that such was true. Appellant had never had any experience in this class of work before that· day.

He followed the directions of the only person who had assumed to direct his movements on that day. If he was following the directions of a representative of the master, he had a right to assume that the place was made safe for him by a proper notification to the drag sawyer to withhold movement until the repair was made. Did he follow the directions of the master's representative? So far as the evidence before the jury was concerned, we think that he did, and that Henderson at the time sustained toward him the relations of a vice principal. Henderson's regular work was that of saw filer, but in the absence of the foreman on that day, Henderson assumed to discharge the duties of foreman. The master could not start the mill to going and go off and leave it without some responsible representative in charge. Until it is otherwise shown, therefore, the one apparently discharging the functions of such a representative at the time must be held to have been such. We think there were sufficient facts for the jury, and that it was error to grant the nonsuit.

The judgment is reversed, and the cause remanded with instructions to grant a new trial.

FULLERTON, MOUNT, and CROW, JJ., concur.