OLENA SWANSON, ADMINISTRATRIX, APPELLEE, V. UNION
STOCK YARDS COMPANY, APPELLANT.

FILED MAY 23, 1911. No. 16,338.

1. Master and Servant: INJURY TO SERVANT: NEGLIGENCE. A track-
man working in obedience to the orders of his foreman upon a
railway track in a stock yards, and in such a position that he
could not see cars shunted down the track against empty cars
standing thereon in close proximity to him, ordinarily has a right
to rely upon his foreman's uniform custom to watch and warn
him of approaching cars.

2. ———: ———: LIABILITY: CONTRIBUTORY NEGLIGENCE. And if, under
those circumstances, the foreman departs from his men under
circumstances justifying a belief that he intends to occupy a
more advantageous point from whence to watch for cars, and
without informing them they must rely solely upon their own
senses for protection, and he knows that a switching crew and
engine are engaged in kicking cars down the track upon which
his men are working, but out of their line of vision and that of
the switchmen, and does not inform them of the situation, and
as a proximate result thereof one of his men is injured by a mov-
ing car, the employer is liable if the injured employee is not
guilty of contributory negligence.

3. Appeal: ERROR NOT AFFECTING SUBSTANTIAL RIGHTS. In reviewing
the record of an action in the district court, this court will dis-
regard any error or defect in the proceedings which does not
affect the substantial rights of the complaining litigant, and will
refuse to reverse a judgment because of any such error.

4. Death: EXCESSIVE DAMAGES. In an action to recover for the widow's
sole benefit for the death of her husband, a recovery of $5,000 is
excessive in view of the fact that he was 65 years of age at the
time of his death, earned but $12.50 a week, and had no source of
income other than the result of common labor.

APPEAL from the district court for Douglas county:
HOWARD KENNEDY, JUDGE. *Affirmed on condition.*

*Greene, Breckenridge & Matters,* for appellant.

*H. C. Murphy* and *J. C. Kinsler,* contra.

Root, J.

This is an action to recover damages for the death of August Swanson, which was caused, as alleged, by the defendant's negligence. The plaintiff prevailed, and the defendant appeals.

The defendant in the prosecution of its business employs several switching crews and a number of trackmen. at the point where Swanson was killed three lines of railway lie parallel to each other and to about 40 connected pens used to restrain live stock which are unloaded from cars upon the track nearest the pens. This track is described as the "chute track," the other tracks are known as the "middle" and "outside" tracks, respectively. Early in the forenoon of the day in question, Swanson and several other laborers were working upon the chute track, but were disturbed by the approach of a train of cars loaded with live stock. In obedience to the orders of John Sund, their foreman, a number of the men went to a distant part of the yards, while Swanson and several other of the men commenced to clean the middle track at a point opposite to where they had been working on the chute track. To comply with the orders, it was necessary for the men to go upon the middle track and with their shovels remove therefrom accumulated sand, cinders, offal and rubbish. At the time this change was made, several empty stock cars or box cars, variously estimated at from three to eight in number, were standing upon the middle track, where they had been shunted by a switching crew which was engaged in "sorting empties" further down the track to the south. Swanson and the other men worked northward from the empties. Sund testifies that he hired and discharged men in his gang, that he directed their movements, watched for approaching cars or engines, and warned his men, and this had been his uniform custom. Swanson had worked for the defendant in the capacity of a sectionman for more than five years before his death, and Sund had been his foreman during that period. Within a

few minutes of the time the men commenced to clean the middle track, the empty cars were moved slowly forward for the space of about 50 feet, evidently propelled by the impact of other empty cars which had been kicked down the track, and the men moved a corresponding distance north- ward, but continued their work. The men were working at intervals for a distance of four rail lengths from the empties, and Sund was at the extreme northern limit of this space. Because of the stock train, the curve in the tracks, and the empty cars south of the men, it was im- possible for them to see cars or a locomotive moving upon the track south of the empties. Sund left his men at work and walked southward past the empty cars to the switch engine, which at the time was not moving, and spoke to the engineer, but did not tell him or any of the switching crew that the sectionmen were at work on the middle track north of the empty cars, neither did he direct any person to keep a look out and warn the men while he was away from them. Within ten minutes after Sund's departure, about 13 empty cars were at one time shunted down the middle track at the rate of from four to ten miles per hour. The force of the impact of these cars with the other empty cars was so great that the latter moved forward so quickly that Swanson, who was in the act of thrusting his shovel into the soil while he was in a stooping posture, was knocked down, caught upon the rails, and three cars and the front wheels of a fourth car ran over him causing instant death.

The defense is a denial of the defendant's alleged negli- gence, and a plea of contributory negligence and of an as- sumption of risk. There are also some allegations in the answer evidently inserted to raise an issue that the de- fendant is not a railroad company. The trial judge, over the defendant's objections, submitted to the jury five dis- tinct alleged negligent acts of the defendant, upon the proof of any one of which a verdict might be returned in the plaintiff's favor. The defendant by requested instruc- tions sought to have all of these contentions withdrawn

from the jury, and now most strenuously argues that there is no competent evidence to sustain them. For the sake of argument, it may be conceded that the evidence will not sustain every charge of negligence thus submitted to the jury, but there is no conflict in the evidence concerning the foreman's relation to Swanson, or that it was his uniform custom to watch for approaching cars or engines while his men were working upon the track under circumstances at all like those surrounding them at the time Swanson was killed and to warn them of the facts. While the deduction of negligence or the want of negligence from primary facts admitted or proved in a particular case is one for the trier of fact to draw, yet it is inconceivable that any intelligent, fair-minded jury would fail to find the defendant negligent in respect to the conduct of John Sund in leaving his men at work behind, but in close proximity to, the barrier of empty cars without substituting another man to discharge his duty to watch and to warn, or, in default of so doing, in failing to notify them that for the time being they must depend solely upon their own senses for protection, or in failing to notify the switching crew of the position of his men. *Mullin v. Central R. Co.*, 77 N. J. Law, 241. We are of opinion that if the court committed any error in submitting grounds for recovery that are not sustained by the proof, in the peculiar condition of the evidence that error is without prejudice and does not justify a reversal of the case. Code, sec. 145. We are further of the opinion that it is immaterial whether or not the plaintiff is a railroad company within the meaning of the employer's liability act (Comp. St. 1909, ch. 21, sec. 3 *et seq.*).

The court took the view that the defendant is a railroad company, and instructed the jury that Swanson's contributory negligence, if he were negligent, should only be considered in diminution of the recovery, if his negligence was slight and the defendant's negligence was by comparison gross. A learned argument was presented upon this subject, but we are of opinion that the law thus argued is not necessarily involved in this case.

The evidence to sustain the plea of contributory negligence, as we understand the record, is about as follows: Witnesses stated that sectionmen are required to protect themselves while working on the track and to keep a lookout for trains; that Sund, when about to depart from his gang, said "Be on the lookout, men!" that Swanson did not face the empty cars and worked too close thereto, notwithstanding a warning given by a Mr. Anderson that if he (Swanson) was not careful the cars "would drop down on him." Sund did not tell his men that he would not watch for or warn them, and he was going in the proper direction to secure a view of cars coming down the track from the south. It seems improbable that Swanson heard his foreman's statement uttered 120 feet distant from where Swanson was at work; but, if it is conceded that he did, the men were not told that they would be thrown upon their own resources for protection. In cleaning the track the men were in constant motion shoveling and walking to and fro. Swanson had a right to rely upon Sund. The foreman took no exception to the positions assumed by his men, and we think there is little, if any, evidence to sustain a deduction of contributory negligence. The issue, however, was submitted to the jury. Under the instructions, if the jury found Swanson guilty of contributory negligence, it was their duty to make a corresponding deduction in the recovery, provided they found that the defendant's negligence was gross in comparison. The verdict is for $5,000, a sum that precludes a belief that the jury found the deceased guilty of contributory negligence. If the jury rejected this defense, as they had a right to do, it is immaterial whether or not the doctrine of comparative negligence was properly submitted to them. We think section 145 of the code controls this phase of the case. In our judgment to this point prejudicial error has not been established by defendant.

It is argued that the recovery is excessive, and a comparison of all of the evidence on this subject convinces us the defendant has just cause for complaint. Swanson at

the time of his death was 65 years of age, was survived by his widow, but, as we understand the evidence, by no children. For eight years preceding his death he had worked as a sectionhand and received $12.50 a week, plus some indefinite amount for overtime. There were no children to receive a father's care. There is no proof that he was the master of a trade, or that he could earn money by any means other than by hard manual labor. Swanson's expectancy of life at the time of his death was between 12 and 13 years. We are not unmindful of the fact that but for this accident he might have lived to be 80 or 90 years of age, but it is not within the bounds of probability that until past 75 years of age he would retain the ability to perform the hard physical labor which seemed his only source of income. Had Swanson remained in the defendant's employ for 12 years at the wage paid him at the time of his death, losing no time because of sickness or of bad weather, he would have received $7,800. One-half of that sum would in all probability be required for his own support. The widow is not entitled to receive more than the present financial value to her of her husband's life. If Swanson had not died, but should continue to earn without diminution in amount or for lost time the wages paid him at the time of his death, and had contributed one-half of his earnings to his wife for 13 years, or until he attained 78 years of age, the present value of that contribution on the basis of 5 per cent. interest would be $3,056. Cases will arise where the courts should not hold a jury to a hard and fast rule of the present value of probable financial contributions in the future, but there is little, if anything, in the evidence in this case to justify a relaxation of the rule that there must be evidence from which the financial loss may with reasonable accuracy be computed. *Nilson v. Chicago, B. & Q. R. Co.*, 84 Neb. 595.

Under all of the circumstances of this case, we are of opinion that any recovery in excess of $3,500 is excessive, and that, unless $1,500 is remitted as of the date of the judgment, it will be reversed and the cause remanded. If,

however, that remittitur is filed within 60 days of the filing of this opinion, the judgment of the district court will be affirmed.

JUDGMENT ACCORDINGLY.