## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT

### OF

# NORTH DAKOTA

---

KASPER SCHANTZ, as Administrator of the Estate of Raphael
Schantz, Appellant, v. NORTHERN PACIFIC RAILWAY
COMPANY, a Corporation, Respondent.

(180 N. W. 517.)

**Master and servant — special interrogatories and general verdict held not
inconsistent.**

1. In an action for personal injuries, under the Federal Employers' Lia-
bility Act, a general verdict was returned in favor of plaintiff for $7,500.
Special interrogatories were submitted to the jury, some of which were an-
swered. The court on motion ordered judgment in favor of defendant, on
answers made to special interrogatories. *Held,* that this was error, there being
no inconsistencies between the answers to the special interrogatories and the
general verdict.

---

NOTE.—Authorities holding that a servant's obedience to orders in attempting
to perform dangerous work with knowledge of the situation did not amount to an
assumption of risk, if he did not know of or fully appreciate the danger, are col-
lated in a note in 4 L.R.A. (N.S.) 838, on attempting dangerous work in obedience
to orders, without fully appreciating the danger.

On servant's assumption of risk in obeying orders to perform obviously dangerous
work, see note in 4 L.R.A. (N.S.) 830.

47 N. D.—1.

**Master and servant — knowledge of and appreciation of danger essential to assumption of risk.**

2. One of the defenses pleaded was assumption of risk. It is *held, in the* circumstances of this case, in order to show assumption of risk, it must be established by a preponderance of the evidence, that the servant had knowledge of and appreciated the danger incident to the act in the course of his employment about to be performed, from which the injury resulted.

**Master and servant — no assumption of risk in obeying command involving danger.**

3. Where the master orders and commands the servant to do an act involving extraordinary danger, the servant is justified in obeying the command, and, by so doing, does not assume the risk. In such case, the risk is taken by the master.

**Appeal and error — no necessity for preparation of statement of case when error appears on face of judgment roll.**

4. In this case, it was not necessary to prepare and present a statement of the case, in order for this court to pass upon the assignments of error, as error appears upon the face of the judgment roll. It shows there was no inconsistencies between the answers to the special interrogatories and the general verdict.

Opinion filed December 11, 1920.

Appeal from judgment of the District Court of Morton County, North Dakota, Honorable *W. C. Crawford,* Judge.

Reversed and remanded, with directions to enter judgment upon general verdict in favor of plaintiff.

*Jacobsen & Murray,* for appellant.

"A general verdict and special findings should be reconciled, if possible, and no specific finding should overthrow the general verdict unless entirely inconsistent and irreconcilable thereto." Drouillard v. Southern P. Co. (Cal.) 172 Pac. 405; Wyldes v. Patterson, 31 N. D. 382, 153 N. W. 631; Cowan v. Mpls. St. P. & S. S. M. R. Co. 172 N. W. 322.

"A servant only assumes those risks of which he is aware and appreciates." Umstad v. Colgate Elevator Co. 18 N. D. 309; Gila Valley C. & N. R. Co. v. Hall, 232 U. S. 94, 58 L. ed. 521.

*W. F. Burnett* and *Young, Conmy & Young,* for respondent.

"A servant assumes the ordinary risks and dangers of his employment and the extraordinary risks and dangers which he knows and

appreciatcs." Chicago, B. & Q. R. Co. v. Shalstrom, 195 Fed. 729, 115 C. C. A. 515, 45 L.R.A.(N.S.) 387, and cases there cited; Union P. R. Co. v. Marone, 246 Fed. 924.

Where a servant knows and appreciates the danger of the act which he undertakes, he docs not any the less assume the risk of injury, or become chargeable with contributory negligence, as the case may be, because he undertakes it under the direction of the master's representative. Gorman v. Des Moines Brick Mfg. Co. 99 Iowa, 264, 68 N. W. 674; Kean v. Detroit Copper & Brass Rolling Mills (Mich.) 33 N. W. 400; Toomey v. Eureka Iron & Steel Works (Mich.) 50 N. W. 850; Manson v. G. N. R. Co. 31 N. D. 643; Cook v. N. P. R. Co. 32 N. D. 340; Vanevery v. Soo (N. D.) 171 N. W. 610.

GRACE, J. This appeal is from a judgment in favor of defendant, dismissing the action, upon a general verdict in favor of the plaintiff, in connection with which verdict special interrogatories were returned.

The complaint states an action against the defendant for personal injuries, under the Federal Employers' Liability Act, U. S. Comp. Stat. §§ 8657–8665. A general verdict was returned in favor of the plaintiff for $7,500. The only question involved in this appeal is whether the special findings destroyed the general verdict.

The following are the special interrogatories and the answers, where answer was made:

Question 1: Did Raphael Schantz know, or should he, in the exercise of reasonable care, have known, that he might be injured if he attempted to catch the moving freight train?

Answer: He should have known.

Question 2: Did the father and mother of Raphael Schantz suffer any actual, pecuniary or money loss because of Raphael's death?

Answer: ————

Question 3: If you answer the preceding question in the affirmative, what is the amount of that loss?

Answer: ————

Question 4: Was the proximate or real cause of Raphael Schantz's death the injury received at Harmon?

Answer: No.

Question 5: What is the damage suffered because of pain and suffering endured by Raphael Schantz?

Answer: $7,500.

Question 6: Was the injury received by Raphael Schantz, at Harmon, an accident for which no one in particular is to blame?

Answer: No.

Subsequent to the return of the general verdict, the defendant made a motion for judgment on the special questions answered by the jury. The court granted the motion, and ordered judgment in favor of the defendant for a dismissal of the action on its merits, and for costs and disbursements, and judgment was entered accordingly.

The order for judgment and judgment is based upon the summons, complaint, answer, general verdict, special interrogatories, motion for judgment by the defendant, based upon the special interrogatories, and motion for judgment by the plaintiff, for judgment on the general verdict.

The complaint, after alleging the corporate character of defendant, and that it was engaged in interstate commerce at the times mentioned in the complaint, contains, in substance, the following allegations:

That by reason of the premises it became the duty of said defendant, its agents, servants, and section foremen, to give the plaintiff's intestate, Raphael Schantz, who was a minor of sixteen years of age, and who was inexperienced and did not appreciate the danger, due warning of the dangerous incident of said employment; that it became the duty of the defendant and its servants to furnish the plaintiff's intestate a safe and suitable motor car to carry him to and from different points of work; that it became the defendant's duty to slow down and stop its trains for the said deceased to get on when it sought to carry the deceased and the rest of the crew on its trains from and to points of work; that it became the duty of the defendant's section foreman, to wit, Peter Barron, to give proper and safe orders to the said deceased, and to properly and safely supervise the carrying and the method of carrying the deceased to and from points of work; that it became the duty of the defendant, its agents, and servants, to commit no act or to omit to do any act which would, could, or might injure the deceased; that it was the duty of the defendant and its servants to

use due care towards the deceased, and properly provide for his safety and welfare while engaged in said employment.

That on said 26th day of April, 1916, while the said defendant, with its said servants, including the deceased, was engaged in interstate commerce as aforementioned, and while the said deceased was acting as such servant and in the lawful performance of his duties as aforesaid, the said deceased, together with the rest of the crew, were returning from work to the town of Mandan, and were riding on said gasolene motor car provided and furnished by the defendant for carrying said section crew as aforesaid; that said gasolene motor car was wholly unsuitable for the purpose for which it was used, as it was old, worn out, and defective; that there was a large crew riding thereon; that it was overloaded with tools; that such overloading was done at the orders and command of the foreman of the defendant's company; that by reason thereof said motor car failed to run and became stalled at a certain point on said road near the town of Harmon, North Dakota; that at said time there was one of the defendant's freight trains, which had customarily been used for carrying the defendant's crew to Mandan, running on said branch road towards Mandan; that the said defendant's foreman informed the deceased, together with the rest of the crew, that he would go up the track towards the coming train and flag it, thereby causing it to slow down, and commanded, ordered, and directed the deceased, together with the rest of the crew, to catch the said coming freight train and ride upon it into Mandan; that the deceased and other members of the crew suggested to the said foreman that said train was running too fast for them to catch; that the said foreman thereupon assured the deceased that it was not coming too fast, that he could catch it easily without any danger; that the said foreman thereupon walked up the track a short distance toward the coming train and pretended and attempted to flag same; that while said train was passing the deceased and the rest of the crew at a high rate of speed, the deceased, together with the rest of the crew, pursuant to said command and order of the said foreman, and being then and there lawfully performing his duties engaging in interstate commerce with the defendant, attempted to catch and get on said train; that while so attempting, and while the deceased was using due care and being free from fault, he was thrown under the wheels of said moving

train, thereby crushing and mangling his leg, fracturing and bruising other parts of his body, head and abdomen, and thereby injuring vital internal organs of his body, and thereby tearing loose the flesh and muscles of his legs, which would make and did make the deceased a permanent cripple and invalid.

That the said injuries were caused wholly by the defective appliances, tools, and equipment of the defendant, and the neglect of the defendant and its servants as aforesaid, among other things, in this, that the motor car for carrying the men was unsafe and not a proper or safe machine for its purpose designed; that it was a dangerous method to require section men and the deceased to catch and jump upon a moving freight train as a means of being carried to and from their points of work; that the said foreman was negligent and careless in ordering and commanding the deceased to catch and get on a fast moving train, the deceased being then and there a youth, inexperienced, and not appreciating the danger of the act; that said foreman carelessly and negligently failed to give the proper signal to the train crew of the moving train to stop or slow down so as to make it safe for the deceased to get on; that the train crew of said moving train carelessly and negligently failed to stop or slow down for the deceased to get on, the said train crew knowing that the deceased and the rest of the section crew were contemplating to catch such freight; that said foreman was careless and negligent in assuring the deceased that it was safe to catch such moving train, and further in assuring the said deceased that said train was not moving at a fast rate of speed; that all of the negligence of the defendant aforementioned contributed to the said injuries.

That by reason thereof the deceased was made sick, sore, and lame, and suffered terrible physical and mental pain, and was confined to the hospital under the care of a physician continuously until on or about the 20th day of August, 1916, when the said Raphael Schantz, deceased, died; that the said deceased, at the time of the injuries, was sixteen years of age, in good health, strong mentally and physically, and had been for years previous engaged in performing manual labor and capable of earning about $75 per month; that the deceased if he had lived, would never have been able to perform any kind of labor thereafter, or earn any money, on account of such injuries; that said

deceased has suffered damages in all by reason thereof in the sum of fifteen thousand dollars ($15,000) and at the time of his death did have a valid claim against the said defendant in said sum for said injuries; that the said deceased left no surviving wife or children; that he was unmarried and had no issue whatsoever; that he did leave surviving him his parents, to wit; Kasper Schantz, his father, and Mary Anna Schantz, his mother; that he also left surviving him his brothers and sisters, being seven in number; that said parents reside in the city of Mandan, North Dakota, and that they were at all times hereinmentioned citizens of the United States.

Then follows an allegation that the deceased was, at the time of his injuries, employed by the defendant and engaged in interstate commerce. The foregoing constitutes plaintiff's first cause of action. The complaint sets forth a second cause of action, based upon the loss of services of the deceased to his parents, who are alleged to be unable to support themselves by reason of being in feeble health, and that they were dependent upon Raphael Schantz for their living, and by reason of his death claimed damages in the sum of $10,000.

The answer denies that Raphael Schantz was in its employ as a section laborer on April 25, 1915, but alleges that he was in its employ on April 18, 1916, and was injured on that date. It denies that he was engaged in interstate commerce when injured, or that he was injured through the negligence of the defendant or the section foreman, and alleges that he was injured through his own fault and negligence, which contributed to his injury.

This case has heretofore been before this court. See Schantz v. Northern P. R. Co. 42 N. D. 377, 173 N. W. 556. In that case, the trial court directed a verdict in favor of the defendant, and judgment was entered thereon. On appeal to this court, the judgment was reversed. It was there, in effect, held that, for the assumption of risk to be available to the defendant, it should be pleaded, and that the question of assumption of risk was one for the consideration of the jury. The case was remanded for a new trial. The case was tried upon the same pleadings that were in the former case.

Prior to the retrial the defendant made a motion to amend its answer. The amended answer is substantially the same as the original, with the exception that it contains an allegation that Raphael

Schantz was injured because of one of the ordinary and usual risks of the business in which he was engaged, and because of a risk which he appreciated and assumed.

It appears that the motion and proposed amended answer were served upon Jacobson and Murray, attorneys for the plaintiff, on August 22, 1919. It appears, by affidavit of Connelly, attorney for the defendant, that he received the motion papers from Watson, Young, & Conmy, prior to September 15, 1919, and that he thereafter turned them over to J. M. Hanley, Judge; and it further appears that when the motion papers were delivered to the said judge, that he advised the affiant that J. K. Murray, attorney for the plaintiff, had advised him over the telephone that he could not be present on the 15th day of September, 1919, when the motion was set to be heard. He never did appear before said court in regard to said motion. The motion was not heard nor determined before the trial, which was on or about January 15, 1920. The motion was granted and amendment of the answer permitted by an order of the court dated February 17, 1920. In the court's order, allowing the amendment, it is stated that the action was tried on the issues presented in the amended answer.

Under § 7482, Comp. Laws 1913, the trial court has power to allow amendment, either before or after judgment, in furtherance of justice and on such terms as may be proper. We will assume, in the further discussion of the matters here involved, that the amended answer was properly allowed.

The general verdict returned by the jury was as follows: "We, the jury, impaneled and sworn to try the above-entitled action, do find for the plaintiff and against the defendant, and assess his damages at the sum of $7,500. Jarris Estrop, Foreman."

Section 7632, Comp. Laws 1913, provides: The verdict of a jury is either general or special. (1) A general verdict is that by which they pronounce generally upon all or any of the issues either in favor of the plaintiff or defendant. Section 7633 provides: The court may also direct the jury, if they render a general verdict, to find in writing upon any particular questions of fact, and further states that, when the special findings of fact are inconsistent with the general verdict, the former controls the latter, and the court must give judgment accordingly.

A general verdict pronounces upon all or any of the issues. The issues referred to in § 7632 are issues of fact. Under § 7605, the issue of fact arises upon material allegation in the complaint, controverted by the answer, or upon new matter in the answer not requiring reply, or controverted by reply; and upon new matter in the reply, unless an issue of law is joined thereon.

Under § 7508, issues of fact, where for the recovery of money, must be tried by the jury unless it is waived as therein provided. The question is then presented, What are the issues of fact in this case? Those must be determined from the pleadings. An inspection of them will disclose many issues of that character, which were all, with the exceptions to be hereinafter noted, determined in favor of the plaintiff, by the general verdict.

The general verdict determined that Raphael Schantz was inexperienced and did not appreciate the danger incident to said employment; that it was the duty of the defendant to slow down and stop its train for Raphael Schantz, the deceased, when it sought to carry the deceased and the rest of the crew on its trains from and to points of work; that it was the duty of the defendant's section foreman, Peter Barron, to give proper and safe orders to Raphael Schantz, and to properly and safely supervise the carrying and the method of carrying him to and from points of work; that Raphael Schantz was engaged in interstate commerce at the time he received his injury; that Peter Barron, the section foreman, informed Raphael Schantz that he would flag the train and cause it to slow down, and that he commanded, ordered, and directed Raphael Schantz and the rest of the crew to catch the freight train and ride upon it to Mandan; that Raphael Schantz and the members of the crew suggested that the train was running too fast; that the foreman assured Raphael Schantz it was not coming too fast, and that he could catch it easily without any danger; that Raphael Schantz, pursuant to the command and order of the foreman, attempted to catch and get on the train, and while so attempting, and while he was using due care, and being free from fault, he was thrown under the wheels of the moving train, his leg mangled and fractured, and his body otherwise bruised, and his vital organs injured, and he was made sick, sore, and lame, and suffered terrible

physical and mental pain, and was confined to the hospital until the 20th day of August, 1916, when he died.

The general verdict determined that the defendant was negligent and careless in the manner alleged in the complaint, and that such negligence contributed to the injuries. It determined in favor of plaintiff every material allegation of the complaint controverted by the answer, resulting in an issue of fact, including Raphael Schantz's knowledge and appreciation, if any, of his danger, and his assumption of risk, except in so far as any of said issues were determined by the special questions submitted to the jury.

The answer to question 1, supra, does not show that Raphael Schantz had any knowledge of his danger. The answer is not that he knew, but that he should have known, in the exercise of reasonable care, of his danger, and that he might be injured if he attempted to catch the moving freight train. What he should have known, and what he actually did know, are two entirely separate and distinct matters. There is no special question asked and answered, showing that he knew and appreciated his danger. Hence, it must follow that the general verdict determined that he neither knew nor appreciated his danger. Until it affirmatively appears that he both knew of and appreciated his danger, it cannot be said that he assumed the risk. Yuha v. Minneapolis, St. P. & S. Ste. M. R. Co. 42 N. D. 179, 171 N. W. 855; Martin v. Hill, 66 Wash. 433, 119 Pac. 849; Kansas City, M. & O. R. Co. v. Roe, — Okla. —, 180 Pac. 371; Lyons v. New Albany, 54 Ind. App. 416, 103 N. E. 20; Chesapeake & O. R. Co. v. De Atley, 241 U. S. 313–316, 60 L. ed. 1019–1021, 36 Sup. Ct. Rep. 564; Gila Valley, G. & N. R. Co. v. Hall, 232 U. S. 94, 58 L. ed. 521, 34 Sup. Ct. Rep. 229; Seaboard Air Line R. Co. v. Horton, 233 U. S. 492, 58 L. ed. 1062, L.R.A.1915C, 1, 34 Sup. Ct. Rep. 635, Ann. Cas. 1915B, 475, 8 N. C. C. A. 834; Umsted v. Colgate Farmers Elevator Co. 18 N. D. 318, 122 N. W. 390.

Ordinarily, in cases where the master has given no positive command or order to the servant, to perform an act in the course of employment, and where the defense of assumption of risk is a proper one, the question of assumption of risk is one of fact for the jury. But, as we shall see, this is not true where the master has given a

positive order or command to the servant, to do an act in the course of the employment, involving more than ordinary danger.

It will be observed that the complaint alleges that the section foreman commanded, ordered, and directed Raphael Schantz, together with the rest of the crew, to catch the freight train and ride upon it into Mandan; that Raphael Schantz and the other members of the crew suggested to the foreman that the train was running too fast for them to catch; that the foreman assured Raphael that it was not coming too fast and that he could easily catch it without any danger.

By the general denial, this became an issue of fact, and the general verdict resolved it in favor of plaintiff's intestate.

Aside from the question of the deceased's extreme minority, and considering the matter as though deceased were a person of maturity, we think the principle is clear that there is no assumption of risk, in the circumstances of this case, where the master, through another acting under his authority, gives an order, incident to the work, to a servant under his control and direction, which the servant obeys. The risk in such case is taken exclusively by the master.

Cook v. St. Paul, M. & M. R. Co. 34 Minn. 45, 24 N. W. 311, 16 Am. Neg. Cas. 247; Strong v. Iowa C. R. Co. 94 Iowa, 380, 62 N. W. 799; Louisville, H. & St. L. R. Co. v. Armstrong, 137 Ky. 146, 125 S. W. 276; Schlavick v. Friedman-Shelby Shoe Co. 157 Mo. App. 83, 137 S. W. 79; Swanson v. Union Stock Yards Co. 89 Neb. 361, 131 N. W. 594; Sherman v. Texas & N. O. R. Co. 99 Tex. 571, 91 S. W. 561; Johnson v. Motor Shingles Co. 50 Wash. 154, 96 Pac. 962; Dalton v. Ogden Gas Co. 126 Ill. App. 502; Mattoon City R. Co. v. Graham, 138 Ill. App. 70, 234 Ill. 483, 84 N. E. 1070, 14 Ann. Cas. 853; Shirk v. Chicago & E. I. R. Co. 140 Ill. App. 22; Wells & F. Co. v. Kapacznyski, 218 Ill. 149, 75 N. E. 751; Koofos v. Great Northern R. Co. 41 N. D. 176, 170 N. W. 861.

Respondent contends that the burden is on plaintiff to show there was error in directing the entry of judgment in defendant's favor; and that this cannot be done unless there is a settled statement of the case, which here has not been presented, and, hence, the testimony is not before the court. We think, however, in this case the error appears upon the judgment roll. There is no inconsistency between the answers

to the special interrogatories and the general verdict. Hence, it was error to enter judgment upon the special questions.

Under § 7632, supra, the general verdict pronounces upon all or any of the issues. The issues are formed by the pleadings. An inspection thereof will disclose the issues. Such issues are, by the general verdict, decided in favor of the plaintiff or defendant, as the case may be, excepting only such of them as are decided upon special interrogatories.

Under our statute, and as a general principle of law, we think it must be plain "that a general verdict upon issues and evidence properly submitted must be presumed to have decided every fact or deduction therefrom essential to support it, while the special finding must be limited to and controlled by its specific terms. The general verdict must be understood as establishing the truth of every material averment of the complaint, except in so far as such averments are contradicted or modified by the answers to the interrogatories.

"In determining whether the special findings are inconsistent with the general verdict, so that the latter must be held to be controlled by the former, the court is not permitted to regard the evidence introduced on the trial. Ordinarily resort can be had only to the findings and verdict and to the pleadings. The question to be decided is not whether, in the light of the evidence adduced, the general verdict is inconsistent with the facts found, the remedy in case of such inconsistency being a new trial, but whether, accepting the facts found within the issues as verities, there is irreconcilable conflict between them and the general verdict." See Clementson Special Verdict, pp. 134–136.

The damages recovered are upon plaintiff's first cause of action. Special interrogatory No. 5 and the answer thereto clearly show this to be true. The general verdict must have been given likewise. No damages were recovered upon the second cause of action. There is no inconsistency between the answers to the special interrogatories and the general verdict. The judgment should have been entered upon the general verdict, and defendant's motion for judgment upon the special questions and answers should have been denied.

The judgment appealed from is reversed. The case is remanded

to the trial court, with directions to enter a judgment upon the general verdict in favor of plaintiff.

The appellant is entitled to his costs and disbursements on appeal.

BRONSON, J. I concur in the result.

BIRDZELL, J. (specially concurring). In its final analysis the case of the respondent rests upon the validity of the proposition asserted in one sentence in respondent's brief. It is said:

". . . If he [Schantz] should have known of the danger, then he took his chances in doing the work in the manner ordered, and cannot recover."

If the answer to the first interrogatory be construed as placing the servant in the same situation he would have occupied had he actually known of the danger, would the knowledge of the dangers attending his act in attempting to board the moving train be sufficient to preclude recovery where he was, in fact, ordered to board the train, his age and inexperience considered? There is no finding in answer to any special interrogatory as to whether he was justified in complying with the master's order, or whether he acted reasonably or unreasonably in so doing. The finding is directed solely to the question of knowledge. The respondent's proposition is faulty in that it ignores the qualifying effect of the master's order. Where a servant acts in response to an order or command, he may be justified in carrying out the order even though it exposes him to a peril of which he is aware. 4 Labatt, Mast. & S. 2d ed. pp. 3933–3935. And it is only where the danger is so apparent that a reasonably prudent person in his situation and *with his knowledge* would not have obeyed the command that the master is exonerated from liability. The rule as to the qualifying effect of an order is especially applicable where the master and the servant are not upon the same footing by reason of the immaturity of the latter. Where the servant acts in obedience to an order, the questions of assumption of the risk of apparent dangers and of contributory negligence are ordinarily questions of fact to be determined by a jury under the circumstances of the particular case. Hennessy v. Ginsberg, 45 N. D. 229, 180 N. W. 796. In the instant case, on the record before this court as shown by the main opinion herein, these issues must be

deemed to have been decided, under the general verdict, in favor of the plaintiff, and in the absence of an inconsistent finding in a special interrogatory it was error to enter judgment for the defendant. For these reasons I concur in the reversal.

ROBINSON, J. (dissenting). In this case I dissent. The case is now before the court on a second appeal, which is from a judgment on a special verdict. The appellant does not present the evidence, but on the former appeal it appeared that deceased was in the employ of defendant as a section laborer, and that he met with a fatal accident by attempting to get onto a fast moving freight train. As the train approached the station, where it did not stop, the section foreman said to the deceased that he might catch onto the train in case it slowed up. He was not ordered to catch onto the moving train, as the opinion assumes. The foreman had no right or authority to give such an order, and he did not give it. It was not in the line of his business. The train did not slow up. The deceased had no orders to get onto it. All that is said concerning a servant obeying the orders of his master is foreign to this case. But it is said that under the general verdict the court should assume to be true certain averments which it knows to be false, that is, the alleged orders given by the foreman and his authority to give such orders which did not pertain to his duty as a section foreman. Now, if the court should hold that the section foreman had an authority by virtue of his employment to direct those under him to risk their lives in catching onto fast moving trains, then the court should remand the case for a new trial and a special finding as to whether or not the foreman gave any such orders. Such a verdict should not be sustained on any refined technicality, when it is based on a presumption which the court knows to be untrue.

CHRISTIANSON, Ch. J. (concurring specially). When this case was here on a former appeal, I was of the opinion that the trial court properly instructed the jury to return a verdict in favor of the defendant. See Schantz v. Northern P. R. Co. 42 N. D. 377, 173 N. W. 558. Time has not altered the views which I then entertained and expressed. These views, however, were not shared by a majority of this court. They believed that under the evidence the question of negli-

gence and assumption of risk were for the jury. Hence, that was the decision of this court. And that decision, right or wrong, became the law of the case. Schmidt v. Beiseker, 19 N. D. 35, 120 N. W. 1096; 4 C. J. 1093 et seq.

In respondent's brief on this appeal it is asserted that "the record testimony shows Raphael Schantz made two attempts to catch the moving train before he was hurt, and was thrown off each time;" that "the record shows that there was no assurance of safety by Barron," and, also, "that there was no order to catch the train,—nothing more than permission to do so." These assertions, however, have nothing to support them, for the evidence is not before us. We have only the judgment roll proper, and from this it appears that the case was submitted to the jury for a general verdict; that in connection with the general verdict, the jury was directed to make answer in writing to certain special interrogatories; that the jury returned a general verdict in favor of the plaintiff for $7,500, and made answers to five different interrogatories. It also appears that the defendant moved for, and that the trial court rendered, judgment in favor of the defendant upon the special findings of the jury.

The sole question presented on this appeal is whether the finding of the jury that Raphael Schantz, in the exercise of reasonable care, should have known that he might be injured if he attempted to catch the moving freight train, was so variant from and contrary to the general verdict that, if the answer to the special interrogatory is true, it would follow as a conclusion of law that the general verdict is unwarranted. 38 Cyc. 1927 et. seq. "Special findings are inconsistent with the general verdict when they as a matter of law authorize a different judgment from that which the verdict will authorize." And "special findings so inconsistent with and antagonistic to the general verdict as to be absolutely irreconcilable with it control the general verdict, and a judgment non obstante must be given according to the special findings." 38 Cyc. 1927. But to control the general verdict the facts found by the jury in answer to the special interrogatories must be so "clearly antagonistic to it as to be absolutely irreconcilable, the conflict being such as to be beyond the possibility of being removed by any evidence admissible under the issues, so that both the general verdict and the special findings cannot stand." 38 Cyc. 1929, 1930.

"No presumption will be indulged in favor of answers of the jury to special interrogatories as against the general verdict; but, on the contrary, every reasonable intendment in favor of the general verdict should be indulged, and all parts of the verdict are to be reconciled in support thereof if it can reasonably be done." 38 Cyc. 1928, 1929. While a special verdict will be construed most strongly against the party upon whom rests the burden of proof, a special finding received without objection will be construed most strongly against the party in whose favor it is found. 38 Cyc. 1930. On the record before us in this case, therefore, we must assume that the evidence adduced was sufficient to justify findings, and that the jury did in fact find in favor of the plaintiff upon every material issue of fact raised by the pleadings,—excepting alone the question of fact covered by finding above referred to. And the question presented here is whether the facts found by the jury in such finding are such that it would follow therefrom as a matter of law that the plaintiff is not entitled to recover, even though all the other issues of fact raised by the pleadings in the case were found in his favor.

The defendant contends that the finding establishes, as a matter of law, that Raphael Schantz assumed the risk of the injuries, I do not believe that the finding may be so construed. I do not believe that this finding establishes anything more, or any other or different condition, than that indisputably established by the evidence upon the former appeal. And, in view of the decision then made by this court, I agree with Mr. Justice Birdzell that even though the facts were as found by the jury in such special finding, it would still be a question for the jury,—in view of all the circumstances alleged in the complaint, including the youth of the deceased, and the order given by the foreman,—to say whether the deceased assumed the risk of the injuries. I disagree, however, with what is said in the principal opinion written by Mr. Justice Grace, and in paragraph 3 of the syllabus, upon this matter. I do not believe that it follows in all cases that "where the master orders and commands the servant to do an act involving extraordinary danger, the servant is justified in obeying the command, and by so doing does not assume the risk;" and that "in such case, the risk is taken by the master." I believe that where the servant acts in obedience to an order, as a general rule, it is for the jury to say whether

the servant assumed the risk.   4 Labatt, Mast. & S. 2d ed. p. 3927; Hennessy v. Ginsberg, 46 N. D. 229, 180 N. W. 796.   There are cases, however, wherein the evidence shows that the danger is one so thoroughly known to and appreciated by the servant; or where the danger to be encountered is at once so obvious and serious that a person, situated as the servant was, necessarily must have known and appreciated the danger.   In such cases,—where the evidence is such that reasonable men in the exercise of reason and judgment can reach only one conclusion,—the question of a command is not of itself sufficient to make the question of assumption of risk one of fact for the jury.